

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 25, 1959

J. E. Peavy, M. D.
Commissioner of Health
State Department of Health
Austin, Texas

Dear Dr. Peavy:

Opinion No. WW-747

Re: Questions relating to
the program of meat in-
spection under the pro-
visions of the Meat In-
spection Law, Article
4476-3, Vernon's Civil
Statutes.

You have requested an opinion of this office on
seven questions relative to the legality of a meat inspec-
tion program contemplated by your department. Each ques-
tion will be stated and answered individually.

Question No. 1: "Would a City pass-
ing an ordinance as outlined in Sec-
tion 12 of the Meat Inspection Law
and providing the necessary facili-
ties for inspection be required to
include poultry and rabbits as a part
of their meat inspection program?"

Section 3, Article 4476-3, Vernon's Civil Statutes,
as amended by Acts 55th Legislature 1957, chapter 32, page
68, provides in part as follows:

"(a) Meat Product: Any edible part
of the carcass of any cattle, calf, sheep,
swine, goat, poultry, or domestic rabbit which
is not manufactured, cured, smoked, processed,
or otherwise treated. As used in this Act,
the word 'poultry' means any slaughtered domes-
ticated bird or commercially-produced game bird.

"(b) Meat Food Product: Any article of
food or any article which enters into the compo-
sition of food for human consumption, which is
derived or prepared in whole or in part from
any portion of the carcass of any cattle, calf,
sheep, swine, goat, poultry, or domestic rabbit,
if such portion is all or a considerable and
definite portion of the article, except such

articles as organotherapeutic substance, meat juice, meat extract, and the like, which are only for medicinal purposes and are advertised only to the medical profession.

"(c) Meat and Products: Carcass, parts of carcass, meat, products, food products, meat products, and meat food products, of or derived from cattle, calf sheep, swine, goats, poultry, and domestic rabbits, which are capable of being used as food by man."

Section 12, Article 4476-3, Vernon's Civil Statutes, provides:

"The governing body of any city in the State of Texas may make mandatory the provisions of this Act and the inspection and labeling of meat and meat food products produced, sold, or offered for sale within their respective jurisdictions by adopting any ordinance to that effect and by providing the necessary facilities for inspection and for the enforcement of this Act.

"Any city adopting any specifications and regulations as a basis for issuing any permit for the use of the 'Texas State Approved Meat for Human Food' label on meat and meat food products shall be governed by the specifications and regulations promulgated by the State Board of Health as herein authorized."

It is the opinion of this Department that a city passing an ordinance as outlined in Section 12, Article 4476-3, Vernon's Civil Statutes, would be required to include poultry and domestic rabbits as a part of their meat inspection program, along with cattle, calves, sheep, swine and goats, as set out in Subsections (a), (b) and (c), Section 3, Article 4476-3, quoted above.

Question No. 2: "In the event of development of the program as described above, who (the municipality in question or the State) would issue and revoke

permits for the use of Texas State Approved labels?"

Section 5 of Article 4476-3, Vernon's Civil Statutes, provides:

"The meat inspection provided by this Act shall be under the supervision of the State Health Officer of the State of Texas."

Section 13, Article 4476-3 of Vernon's Civil Statutes, reads as follows:

"Any person, firm, association, or corporation desiring to use the 'Texas State Approved' meat label in representing, publishing, or advertising any meat, or meat foor products offered for sale or to be sold within this State for food for human consumption shall make application to the State Board of Health, prior to the use of such a label for a permit to use any such label in advertising, representing, or labeling such meat or meat food products."

Section 14, Article 4476-3 of Vernon's Civil Statutes, reads as follows:

"The State Health Officer receiving such applications as provided for in Section 4 of this Act is hereby authorized and empowered to award to such applicant a permit to use the 'Texas State Approved' meat label according to the requirements of this Act. The State Board of Health shall have the power to revoke any permit issued, after notice by registered mail to the affected permittee and after a hearing to be held in accordance with regulations issued covering this subject, when upon examination and hearing it is found that any penal provision or Section of this Act has been violated. The State Health Officer shall keep a record for public inspection of all reports received, and the issuance or revocation of permits under this Act."

It is apparent under Section 5 that the entire meat inspection program is to be supervised by the State Health Officer, and that the language under Sections 13 and 14 indicates that permits to use the Texas State Approved label are to be issued on an individual basis by the State Board of Health even though these individuals operate under the inspection service provided by a city ordinance in compliance with Section 12 of this Act.

In view of the foregoing, it is our opinion that where there is a local meat inspection ordinance, as provided under Section 12, this activity should not be by-passed, and any application for a permit to use the Texas State Approved label in those cities should be channeled through the local meat inspection department and should have the approval of the local authority, as well as the State Board of Health, before being issued.

> Question No. 3. "Can the State Health Department collect money, from packers who receive a permit to use the Texas State Approved label, in order to defray the cost of State supervision necessary to determine the initial and continued compliance with the State law and State regulations promulgated under the law."

Section 14a, Article 4476-3 of Vernon's Civil Statutes, reads as follows:

> "Any person, firm, association, or corporation desiring to use the 'Texas State Approved' meat label in representing, publishing, or advertising any meat or meat food products offered for sale or to be sold in this State for human consumption shall pay for the necessary inspection service, and the State Board of Health shall adopt rules and regulations relating to such inspection charges which will, in effect, provide that the fees charged shall be fixed as nearly as possible with reference to the cost of maintaining the inspection service by the State Health Department which is necessary to permit the use of the 'Texas State Approved Meat for Human Food' label. Any such moneys charged and

and collected for such inspection service shall be payable to the State Health Department and shall be deposited in the State Treasury in a special account to the credit of the State Health Department and used for the purpose of carrying out the program of inspection which is necessary before the issuing of permits for the use of the 'Texas State Approved Meat for Human Food' label."

Section 14a specifically authorizes the State Board of Health to collect money from applicants who wish to use the Texas State Approved label to defray the cost of supervision by the State Board of Health.

Question No. 4. "Can monies already collected under the State Meat Inspection Program be utilized to defray the cost of meat inspection supervision, where this supervision is performed by the State and the activity supervised is a municipal inspection service which has adopted the provisions of the State law and the State rules and regulations as provided for under Section 12, Article 4476-3?"

If, under Section 12, Article 4476-3, the governing body of any city in the State of Texas has adopted an ordinance making the provisions of the Meat Inspection Act mandatory, the necessary facilities for the enforcement of this Act must be provided on the local level. However, under Section 5 of this Act, the responsibility of the State to supervise the local activity remains.

The language under Section 14a gives the State the authority to use moneys already collected under the State Meat Inspection Program to defray the cost of meat inspection supervision, generally, and there is nothing in the language of Section 14a which would prohibit the money collected from being used to supervise a municipal inspection service activity where the municipality has adopted an ordinance as provided under Section 12, Article 4476-3.

Question No. 5. "Would meat stamps, labels and other identifying markings on meat products come within the provisions of the Meat Inspection Law if such legends, labels and stamps carried the wording 'Insp. & Psd. City of _____ Est. No. Texas State Approved'."

Section 7, Article 4476-3, reads in part, as follows:

"The State Health Officer is hereby authorized and empowered to have designed a distinctive inspection mark, stamp, tag, or label which shall state 'Texas State Approved Establishment No. _____' . . ."

The first sentence of Section 10, Article 4476-3, reads as follows:

"No meat or meat products sold, produced, or offered for sale within this State by any person, firm, association, or corporation shall carry a label, device, or design marked 'Texas State Approved Establishment No._____,' . . . which does not conform to the definition and requirements of this Act."

We think it is clearly the intention of the Legislature that the words "Texas State Approved Establishment No. _____" be prominently displayed on the inspection mark, stamp, or label designated by the State Board of Health as the official label of the Meat Inspection Act. It is the opinion of this Department, however, that where, under Section 12 of this Act a city ordinance has been passed, the words "Insp. & Psd. City of _____" may be added and would not be inconsistent with this Act where the inspection service is a joint effort between the city and State.

Question No. 6. "Under this portended program described above would compliance with Section 12 by a municipality require the Texas State Department of Health to permit use of the 'Texas State Approved' label by all plants under that municipality's inspection jurisdiction."

As stated in our answer to question number 2, where there is a local meat inspection activity operating under Section 12, the local agency should not be by-passed and

the application for a permit to use the Texas State Approved label by individuals should be channeled through the local meat inspection department with the approval of both the local and State agencies before being issued.

It is our opinion that compliance with Section 12 by a municipality, standing alone, would not require the Texas State Department of Health to permit use of the Texas State Approved label by all plants under that municipality's inspection jurisdiction, but those plants or individuals approved by both the State Department of Health and the local department would be issued such permits.

> Question No. 7: "It is further desired to know whether or not in circumstances where the health jurisdiction of a local health officer extends by agreement beyond the geographic limits of a municipality complying with Section 12 of the law, can the meat inspection law be then applied by the said health officer to the full geographic limits of the agreed jurisdiction."

Since there is no provision in Article 4476-3, either express or implied, for a city adopting the provisions of the Meat Inspection Act under Section 12 to operate beyond the corporate limits of the municipality, it is the opinion of this Department that supervision of activities under the Meat Inspection Act by the cities cannot extend beyond the territory of the municipality.

Article 4476-3 was amended as late as 1957, and the Legislature made no change in the language which could in any way be interpreted as giving extra territorial jurisdiction to a city coming under this Act, which in our opinion indicates that such grant of power was not intended.

### SUMMARY

The inspection of poultry and domestic rabbits is required under Article 4476-3 Vernon's Civil Statutes, in a city passing an ordinance as outlined

under this Act.

Any permits issued for the use of the Texas State Approved label under the Meat Inspection Act in a city having passed an ordinance to come under this Act, should be issued only after inspection and approval on both the State and local levels. The State Health Department alone has the power to revoke any permit issued when, after notice and hearing, it is determined that a section of this Act has been violated.

The State Health Department may collect fees from individuals who desire to use the Texas State Approved label to defray the cost of State supervision.

Fees collected by the State Health Department from individuals who desire to use the State Approved label may be used to defray the cost of supervision of both individual packers and plants under the jurisdiction of a municipality complying with the Meat Inspection Act.

The official legend, label or stamp adopted by the State Health Department for the Meat Inspection Program must bear the words "Texas State Approved Establishment No. _____", but where the permits are issued in cooperation with the local meat inspection service, it is not inconsistent with this Act to add the words "Insp. & Psd., City of _____".

All plants under a municipality inspection jurisdiction must have the approval of both the local and State Health Department before they can be issued the Texas State Approved label.

A city may not go beyond its corporate limits, in its program of supervision under the Meat Inspection Act since extra

territorial powers were not granted
by the Legislature under Article
4476-3, Vernon's Civil Statutes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Iola Wilcox*

Iola Wilcox
Assistant

IW:mg:ms

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

C. Dean Davis
Robert G. Scofield
Marietta Payne

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore